15 So.3d 728 (2009)
Lewis Clarence LESTER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-4094.
District Court of Appeal of Florida, Fourth District.
July 15, 2009.
*729 Phillip Massa and Marrett W. Hanna, Office of Criminal Conflict and Regional Civil Counsel, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
The issue we address in this case is whether a defendant who was convicted after trial has a remedy in postconviction relief where his counsel misadvised him of his potential sentence, leading him to reject a more favorable pretrial plea offer from the state. We hold that the defendant is not entitled to a new trial but to a sentence no harsher than the expected maximum sentence he would have received by proceeding to trial based upon his attorney's advice.
The state charged appellant Lester with robbery by sudden snatching and offered a 41.7-month sentence in return for a guilty plea. Lester rejected the offer. Immediately prior to the commencement of trial, the state amended the information to charge Lester with robbery by force. Lester proceeded to trial and was found guilty. Prior to sentencing, the state filed a notice of its intent to seek habitual violent felony offender (HVFO) status. The court found that Lester qualified for HVFO status and sentenced him to a mandatory minimum term of thirty years in prison.
After his conviction, sentence, and appeal, Lester moved for postconviction relief, claiming that his trial counsel had misadvised him of his potential sentence. Lester claimed that counsel did not inform him of the possibility of habitualization and a thirty-year mandatory sentence. Had he known of that possibility, he would have accepted the 41.7-month plea offer by the state. The trial court granted an evidentiary hearing on the claim.
At the hearing, Lester testified that counsel had advised him of the potential fifteen-year sentence but had not advised him of a possible habitual sentence of thirty years. He would have accepted the state's plea offer had he known of his exposure to a thirty-year sentence.
Lester's trial counsel testified to his conversations with Lester about the plea. When the state originally extended the plea offer of 41.7 months, trial counsel informed Lester that the charged crime was a third-degree felony and carried a maximum five-year penalty. Although counsel advised Lester to take the plea, Lester refused, wishing to go to trial. On the eve of trial the state increased the charge to robbery by force for which the maximum penalty would be fifteen years as a prison releasee reoffender (PRR). Counsel discussed this with Lester, and recommended acceptance, but Lester still desired to go to trial. Prior to trial, the state had not filed a notice of intent to seek habitualization as a violent felony offender, so counsel did not discuss any habitualization with Lester. Trial counsel admitted that in hindsight he should have advised Lester of the potential of an HVFO sentence, but the state had increased the charge only on the eve of trial and had not filed a notice to seek habitualization. *730 Counsel opined, however, that based on his dealing with Lester, Lester's position with respect to the plea would have been different if Lester had known about the HVFO exposure. Lester's counsel at sentencing also testified and agreed that Lester had not known about the exposure of thirty to forty years for the HVFO designation.
Following the evidentiary hearing, the trial court denied the motion. It found that "there is no evidence in the record that [Lester's trial attorney] failed to accurately advise his client of the State's plea offer nor is there any evidence to indicate that any of the information provided to the defendant was misleading or inaccurate." From the trial court's order, Lester appeals.
"The primary guide for ineffective assistance claims is the United States Supreme Court's hallmark opinion in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Cottle v. State, 733 So.2d 963, 965 (Fla.1999). "First, the defendant must show that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms. Next, [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Beasley v. State, 964 So.2d 213, 216 (Fla. 2d DCA 2007) (internal quotations and citation omitted). This court reviews the postconviction court's factual findings for competent, substantial evidence and its legal conclusions de novo. Id.
The supreme court addressed the requirements to allege ineffective assistance of counsel where counsel advises a defendant to reject a favorable plea offer in Morgan v. State, 991 So.2d 835 (Fla.2008). The court said:
[We] reaffirm the requirements that a defendant must allege and prove in order to be entitled to relief based on ineffective assistance of counsel for advising a defendant to reject a plea offer. The defendant must allege and prove that (1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel's failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed.
Id. at 839-40 (emphasis added). Although in this case counsel actually recommended acceptance of the plea, we think that the Morgan factors apply, because the defendant testified that he would have accepted the plea had counsel advised him of a potential thirty to forty-year sentence as a HVFO. See also Jackson v. State, 987 So.2d 233 (Fla. 4th DCA 2008).
This case is most closely analogous to Lewis v. State, 751 So.2d 715 (Fla. 5th DCA 2000). In Lewis, the state charged the defendant with sale of cocaine. His attorney conveyed the state's offer of one year in prison. Although the attorney knew that Lewis could be habitualized, he did not think the state was requesting that and did not discuss with Lewis the potential of a thirty-year sentence. Counsel advised Lewis that if he were convicted he would most likely be facing a two to three-year sentence. Believing his innocence, Lewis rejected the plea and proceeded to trial where he was found guilty. After trial, the state moved to habitualize Lewis. Based upon the state's notice, the court found him to be a habitual offender and sentenced him to fifteen years in prison.
After an evidentiary hearing on his postconviction relief motion in which he alleged that he would have taken the plea had his attorney properly advised him of the potential *731 sentence as a habitual offender, the trial court denied relief. The Fifth District reversed because of counsel's failure to advise Lewis regarding the habitualization penalty. The court said:
We conclude that Lewis is entitled to relief because his trial counsel conceded that when the state's offer of one year was made, he failed to inform Lewis of a potential sentence of 30 years incarceration and consistently informed him, instead, that his maximum exposure of incarceration was two to three years. Even though the possibility of a much longer sentence seemed remote, the possibility became the reality. Lewis, in order to make an informed decision, needed to be aware of the possible penalties.
Id. at 718. The court reversed for a new trial but encouraged the "good faith resumption of plea negotiations." Id.
Similarly, in Revell v. State, 989 So.2d 751 (Fla. 2d DCA 2008), the court reversed Revell's conviction based upon his postconviction claim of ineffective assistance of counsel "for failing to advise him of the possibility and consequences of being sentenced as a habitual felony offender." Id. at 751. At the evidentiary hearing, his counsel admitted that he was not aware of that possibility and therefore failed to inform the defendant of it. The Second District found that counsel's failure to advise the defendant of the potential habitual offender sentencing constituted ineffective assistance of counsel. The court reversed and remanded for a new trial, with the suggestion in Lewis that good faith plea negotiations be resumed.
In this case counsel admitted that he had not informed Lester of the potential of habitualization and the potential sentence of thirty to forty years. Based upon Lewis and Revell, Lester has shown that counsel was ineffective and that he would have taken the plea had counsel informed him of the consequences.
We diverge from Lewis and Revell regarding the proper remedy in this case. The proper remedy in such cases where a defendant rejects a plea offer and proceeds to trial has been debated in the courts.[1] Where the defendant rejects a *732 plea offer, which is not a constitutionally protected right, in favor of a fair trial, in which the state has been put to its burden of proof, a balancing of interests is required for any postconviction relief based upon that plea rejection. In United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), the Court said:
At the same time and without detracting from the fundamental importance of the right to counsel in criminal cases, we have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice. Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.

(emphasis added). Taking to heart that admonition by the Supreme Court, we think that more narrowly tailored relief is warranted by the specific constitutional violation. Here, after the state increased the charges prior to trial, Lester still rejected his counsel's recommendation to accept the plea after having been advised of the potential PRR sentence of fifteen years. He proceeded to trial with the expectation that should he be convicted of the new charge, he would receive a fifteen-year sentence. Only after his conviction did the state file a notice of intent to seek HVFO sentencing.
The specific injury to Lester was the failure to inform him of the HVFO sentencing potential. Based upon the evidentiary hearing, Lester was fully aware of the potential for PRR sentencing if he were convicted at trial. The state, on the other hand, incurred the time and expense of a full trial and should not be compelled to retry the defendant if some other remedy would uphold both the defendant's constitutional rights and the state's right to finality with an appropriate sentence for the conviction obtained.
Under these circumstances, we think the more narrowly tailored remedy would permit the state to elect whether to retry Lester or to withdraw its notice of intent to seek HVFO sentencing. If it would withdraw that notice, the court could sentence Lester as a PRR to fifteen years. Lester would receive a sentence no greater than he anticipated when rejecting the plea offer of the state, and the state would not be required to retry him.
Based on the foregoing, we reverse the trial court's denial of appellant's motion for postconviction relief. We remand for a new trial unless, within the time prescribed by Florida Rule of Criminal Procedure 3.191(m), the state withdraws its notice of intent to seek HVFO sentencing, in which case the court shall sentence Lester as a PRR and no new trial shall be required.
HAZOURI, J., concurs.
GROSS, C.J., concurs specially.
GROSS, C.J., concurring specially.
This postconviction relief case concerns a defendant who was found guilty in a jury trial. His conviction was affirmed. He received what the constitution contemplateshe had a "speedy and public trial, by an impartial jury"; he was "informed of *733 the nature and cause of the accusation"; he "was confronted with the witnesses against him;" he had "compulsory process for obtaining witnesses in his favor"; and he had "the assistance of counsel for his defence." U.S. Const. Amend. VI. He was not "compelled ... to be a witness against himself"; he was not "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V.
After the jury verdict, but before sentencing, the state filed a notice of its intent to have Lester classified as an habitual violent felony offender. The court found that he qualified for HVFO status and sentenced him to 30 years in prison.
Before trial, Lester rejected a plea offer for a 41.7 month sentence. He now claims that at the time he rejected the plea, he did not know that the state could seek to have him sentenced as an HVFO. He says that when he rejected the plea, he did not know that he faced 30 years in prison.
We are compelled to grant relief by Morgan v. State, 991 So.2d 835 (Fla.2008).
This development in the law concerns me. It goes beyond the limits contemplated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The law now renders a jury trial, explicitly guaranteed by the Constitution, secondary to the right to get a plea bargain, which is found nowhere in the Constitution. At a trial, Lester had the chance of an outright acquittal. Going to trial is a gable involving risk for both sides. As a trial judge, I saw strong cases fail and weak cases prevail. It is destructive of the entire process to allow a defendant to enjoy all the benefits of a trial and then force the state into the position it was in before the trial occurred.
In the criminal justice system envisioned by the Constitution, there would be no plea bargains, only trials complete with all the attendant guarantees. Due to the crush of numbers, plea bargaining has come to be recognized as an integral component of the criminal justice system. There are too many cases to hold a trial in every one.
Postconviction relief makes constitutional sense where counsel's ineptitude impacted the trial or convinced a defendant to give up his right to a trial by pleading guilty. Different from these situations, Morgan concerned a situation where the defendant went to trial and lost, but counsel's ineffectiveness arose from the advice to reject a plea offer. In Morgan and Cottle v. State, 733 So.2d 963 (Fla.1999), the Florida Supreme Court read Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), as extending the Strickland "standard and analysis ... to claims of ineffective assistance that arise in the plea context." Morgan, 991 So.2d at 840. Morgan extended Strickland to every situation that arises from the plea bargaining process, including cases where defendants rejected plea offers and proceeded to trial.
Hill does not support the Florida Supreme Court's extension of it. Hill was a case where a defendant pleaded guilty and gave up his right to a trial. The analysis in Hill turns on obtaining the trial that was blocked by counsel's ineptitude. To satisfy Strickland's prejudice requirement, Hill holds that a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S.Ct. 366. Hill describes the prejudice inquiry in "guilty plea" cases by comparing it to "ineffective-assistance challenges to convictions obtained through a trial." Id. Nothing in Hill suggests that the United States Supreme Court intended it to apply in "rejection of plea offer" cases.
*734 But for Morgan, I would hold that a defendant whose guilt is determined after a trial, conducted with all of the guarantees of the Constitution, has not suffered a constitutional deprivation, even where his lawyer's conduct prevented him from accepting a plea, which with the post-trial benefit of hindsight, turns out to have been a favorable one. The guilt of such a defendant has been established in the manner envisioned by the framers of the Constitution. To set aside the trial in this case elevates the constitutional importance of the plea bargaining process over that of the trial itself, which is at the heart of the Sixth Amendment. This is the case where the state should seek review in the United States Supreme Court to consider the extension of Hill v. Lockhart to "rejection of plea" cases.
NOTES
[1] A short synopsis of some positions various courts have taken is found in Riggs v. Fairman, 178 F.Supp.2d 1141, 1151-52 (C.D.Cal. 2001):

When ineffective assistance of counsel has deprived a defendant of a favorable plea bargain, courts have not been consistent in the remedies afforded. Some courts vacate the conviction and return the parties to the plea bargaining stage, where the parties may negotiate, or decline to negotiate, as they see fit. See, e.g., United States v. Gordon, 156 F.3d 376, 381-82 (2nd Cir. 1998) (upholding district court's discretion to order retrial); People v. Curry, 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 890-91 (1997) (new trial accompanied by resumption of plea bargaining process); In re Alvernaz, 2 Cal.4th 924, 942-44, 8 Cal. Rptr.2d 713, 724-26, 830 P.2d 747, 758-59 (1992) ("Most courts, in determining the remedy that should be afforded a defendant who establishes that he or she has been denied effective assistance of counsel with regard to an offered plea bargain, have vacated the judgment of conviction and remanded the case for a new trial"). Other courts force the prosecution to reinstate the lost plea offer. See, e.g., Alvernaz v. Ratelle, 831 F.Supp. 790, 797-99 (S.D.Cal.1993); Williams v. State, 326 Md. 367, 382-83, 605 A.2d 103, 110-11 (1992). Still other courts return the parties to the plea bargaining stage, but impose a rebuttable presumption of vindictiveness upon any prosecutorial refusal to reinstate the lost plea offer. See, e.g., Turner v. Tennessee, 940 F.2d 1000, 1001-02 (6th Cir.1991), cert. denied, 502 U.S. 1050, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992).
Depending upon the circumstances, each of these remedies can be inadequate or unfair. Vacation of the conviction sometimes is unfair to the state. Such a remedy reverses the result of an entirely fair trial, sometimes in situations where the passage of time would make retrial difficult or impossible. See State v. Donald, 198 Ariz. 406, 10 P.3d 1193, 1205 n. 7 (Ariz.App. 2000), cert. denied, 534 U.S. 825, 122 S.Ct. 63, 151 L.Ed.2d 30 (2001). Mere vacation of the conviction also sometimes is unfair to the petitioner. The remedy does not restore the lost plea opportunity of which the petitioner was deprived, although it may, as a practical matter, induce the prosecution to bargain anew.
(Footnote omitted).